[Cite as *In re C.G.*, 2016-Ohio-375.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re C.G.

Court of Appeals No.  L-15-1256
L-15-1257

Trial Court No. JC 15245110

**DECISION AND JUDGMENT**

Decided:  February 3, 2016

* * * * *

Adam H. Houser, for appellant, A.S.

Stephen D. Long, for appellant, L.G.

Dianne L. Keeler, for appellee.

* * * * *

**JENSEN, P.J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, Juvenile Division, awarding permanent custody of C.G. (born January 2, 2015) to

Lucas County Children Services ("LCCS") and terminating the parental rights of the biological parents. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} C.G. was born at Toledo Hospital on January 2, 2015, to A.S. ("mother"). At the time of birth, C.G. had cocaine in his system.

{¶ 3} A.S. was married to J.S., the child's legal father. However, mother claimed the child's biological father was L.G. ("father"). DNA testing confirmed mother's claim.

{¶ 4} On January 6, 2015, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing. The complaint alleged that mother had tested positive for cocaine and marijuana on various occasions during her pregnancy with C.G., and that her parental rights had previously been terminated in regard to two other children. The complaint further alleged that LCCS had worked with mother since September 2009 to address mother's substance abuse, mental health, criminal history, prostitution, and lack of stable housing, but that she had a history of "disappearing" and that she had been terminated from services in 2013 for non-compliance. LCCS asserted that there is a history of violence between mother and father: mother had been charged with assault against father in September 2014, and father had been charged with violence against mother on numerous occasions.

{¶ 5} Mother and father appeared at the emergency shelter care hearing. Counsel was appointed for mother, father, and J.S. A guardian ad litem was appointed for the child. At the close of the hearing, the trial court placed C.G. in the temporary custody of LCCS.

2.

{¶ 6} An adjudication hearing was held March 30, 2015, after which the trial court found C.G. a dependent and neglected child. The court accepted the agreement of the parties to amend the case plan to include services for mother and father as follows:

> * * * substance abuse, mental health and domestic violence services (victim's treatment for [mother] and domestic violence offender's treatment for [father]), and Mr. Gamble shall continue with assessment and possible recommended services to address substance abuse and other mental health issues.  Further, it was agreed that the case plan will be amended to require each parent to have stable housing and legal source of income.  The Court orders that the case plan shall include appropriate visitation between the parents and the child, * * * and that each parent shall be required to provide random drug screens and requested by [LCCS] caseworker or the guardian ad litem.

{¶ 7} On July 7, 2015, LCCS filed a motion for permanent custody.  A deputy clerk attempted to serve both mother and father with a copy of the motion for permanent custody at their last known address, but the service was unsuccessful.  The trial court then ordered LCCS to perfect service of summons by publication.  August 27, 2015 docket entries indicate summons were issued to both mother and father by publication (regular mail and posting) pursuant to Juv.R. 16(A).

3.

**{¶ 8}** The disposition hearing was held September 11, 2015.  Counsel for mother, counsel for father, the guardian ad litem, the caseworker, and counsel for LCCS appeared, in person, while mother appeared by phone.  When asked why father was not present, counsel for father stated:

> Your honor, I do not know the whereabouts of my client.  The last time that I've seen him was in this courtroom on March the 30th.  He was an hour and 25 minutes late for the first permanent custody trial.  Since that time I sent him a letter on August the 6th.  I called him and left a message on the number provided on August the 18th.  At the pretrial on August 19th he was not here.  I mailed him a letter on August the 24th and again on September the 4th notifying him of today's hearing and called and left a message on that phone number provided on September the 4th and September the 8th.  So I have not seen him or talked to him since March the 30th.

Thereafter, without objection, the trial court granted counsel's requested to withdraw as counsel for father.  At the close of the hearing, the trial court granted LCCS's motion for permanent custody.  Father and mother appealed.

**{¶ 9}** Pursuant to the procedure outline by the United States Supreme Court in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), father's appointed counsel filed a motion to withdraw, accompanied by a brief with three

4.

proposed assignments of error and an affidavit in which he avers that after careful review of the record and of existing case law, he believes there are no arguable issues for appeal. Appellate counsel also attests that he sent appellant a copy of his motion to withdraw as well as a copy of the brief containing the proposed assignments of error thereby providing appellant with an opportunity to file any additional argument he might want this court to consider. Father did not file a separate brief or any additional arguments.

{¶ 10} The three proposed assignments of error presented in the *Anders* brief are:

1. The trial court erred in granting appellee Lucas County Children Services board's motion for permanent custody as the decision was against the manifest weight of the evidence.

2. Appellant was denied due process where the trial court failed to provide him sufficient notice.

3. The trial court erred in failing to provide the successor guardian ad litem sufficient time to conduct an independent investigation to determine the best interest of the child.

{¶ 11} Pursuant to our responsibilities under *Anders*, we have independently reviewed the entire record on appeal and conclude, as did the biological father's appointed counsel, that there are no arguably meritorious issues for appellate review and that this cause is wholly frivolous. *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978).

5.

{¶ 12} In her brief, mother asserts that "[t]he granting of permanent custody of the child to LCCS was reversible error because LCCS failed to prove by clear and convincing evidence that the child could not be placed with appellant within a reasonable time." As mother's sole assignment of error and father's first proposed assignment of error are interrelated, they will be addressed together.

I.

{¶ 13} Under certain circumstances, a trial court can award permanent custody to a public children's services agency upon finding that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents," so long as the court also determines that the award of permanent custody is in the child's best interests. R.C. 2151.414(B)(1).

{¶ 14} Under R.C. 2151.414(E), a finding, by clear and convincing evidence, that one of the conditions listed in R.C. 2151.414(E)(1)-(16) exists is necessary to establish that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996), syllabus. In turn, R.C. 2151.414 (D) lists relevant factors to be considered by the court in determining whether an award of permanent custody to a public children's services agency is in the best interest of the child.

{¶ 15} Clear and convincing evidence is evidence that what will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be

6.

established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 16} Here, the trial court made seven findings under the conditions listed in R.C. 2151.414(E). First, under R.C. 2151.414(E)(1), the trial court held that mother and father failed "continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."

{¶ 17} R.C. 2151.414(E)(1) states:

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 18} During the disposition hearing, Angelica Miller, a caseworker with LCCS, testified that when C.G. was born, mother was struggling with mental health issues,

7.

substance abuse, and was unable to maintain stable housing and a legal source of income (mother had a history of prostitution). Miller further indicated that there was an additional concern regarding domestic violence between mother and father.

{¶ 19} Miller testified that mother completed an assessment though New Concepts on January 13, 2015. Mother was diagnosed with "cannabis use disorder, severe; stimulant disorder, severe in remission; bipolar one disorder; PTSD and antisocial personality disorder." Mother was hospitalized January 28-30, 2015, after a suicide attempt. Mother was discharged on February 5, 2015, from intensive outpatient treatment due to noncompliance. Mother was then linked to the Zepf Center where she was diagnosed with "bipolar one disorder, most recent episode depressed, severe, and specified with psychotic behavior."

{¶ 20} Miller indicated that during her involvement in the case, mother was inconsistent with her mental health treatment, she did not engage in substance abuse treatment, failed to start domestic violence group, failed to obtain stable housing, and never established a legal source of income.

{¶ 21} In regard to father, Miller testified that father's services in the case plan included "batterer's treatment, mental health, substance abuse and for him to also secure stable housing and a legal source of income."

{¶ 22} Miller indicated father was linked to New Concepts for substance abuse treatment before LCCS became involved with him, and that father did successfully

8.

complete the program. However, father did not complete the batterer's intervention group. Miller testified that while father did participate in mental health counseling, he refused to take a prescribed medication because it "made him feel crazy."

{¶ 23} Danette Popovich, a caseworker with LCCS, transitioned into the case in April, 2015, and replaced Miller. Popovich testified that neither mother nor father participated in any services while she was assigned to the case.

{¶ 24} This evidence is sufficient to support the trial court's finding relating to mother and father's failure to remedy the conditions which caused the child to be placed outside the home.

{¶ 25} Second, under R.C. 2151.414(E)(2), the trial court held that mother suffers from "chemical dependency so severe that it makes her unable to provide an adequate permanent home for the child." R.C. 2151.414(E)(2) allows a court to consider:

> Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

{¶ 26} LCCS caseworker Miller testified that mother admitted to drug use on the day she and C.G. were discharged from the hospital. The case plan documents filed by

9.

Miller and Papovich indicate mother has a history of cocaine and marijuana abuse and that she has failed to participate in services addressing the same. This evidence is sufficient to support the trial court's finding relating to mother's chemical dependency.

{¶ 27} Third, under R.C. 2151.414(E)(4), the trial court held that mother and father have "chosen not to visit the child when able to do so." R.C. 2151.414(E)(2) allows a court to consider whether "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."

{¶ 28} Caseworker Miller explained that although scheduled to do so, father never visited with the child and mother visited the child only once. This evidence is sufficient to support the trial court's finding that the parents failed to visit, support and communicate with the child.

{¶ 29} Fourth, under R.C. 2151.414(E)(1), the trial court held that "father has abandoned the child." R.C. 2151.414(E)(10) allows a court to consider whether "[t]he parent has abandoned the child." This finding is supported by LCCS caseworker testimony that father never visited the child and refused to participate in services that would reunite him with the child.

{¶ 30} Fifth, under R.C. 2151.414(E)(11), the trial court held that mother "has had parental rights involuntarily terminated with respect to siblings of this child and has failed to provide clear and convincing evidence to prove that, notwithstanding the prior

10.

terminations, she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11) allows a court to consider whether:

> The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 31} At the dispositional hearing, LCCS caseworkers testified that two of mother's children had previously been removed from her care. The record includes judgment entries granting LCCS permanent custody of mother's two other children. Further, mother failed to provide clear and convincing evidence that she could provide adequate care for the child. Therefore, we believe that some competent, credible evidence exists to support the trial court's finding that placement with mother is not in the child's best interest because of a prior termination of mother's parental rights.

{¶ 32} Sixth, the trial court held that mother has been "repeatedly incarcerated and the repeated incarceration prevents her from providing" care for the child. R.C. 2151.414(E)(13) allows a court to consider whether "[t]he parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child."

11.

{¶ 33} Caseworker Popovich testified that shortly after she began working on the case, she lost contact with mother and wasn't able to located her. In July 2015, Popovich located mother in jail. Mother wrote the following to Popovich in a letter postmarked August 28, 2015:

> I was wondering if you could possibly come see me soon here [at] the Monroe County Jail? I am due to go back to court for sentencing on Sep 21st [R's] birthday. I should be released then on probation and plan on coming to Toledo to get busy! I know I've had a lot of time to work my case plan but I just wasn't ready. After doing some true soul searching I've realized that GOD has blessed me with 4 Beautiful kids who need their mother! Please, please just give me one more chance please! I have a plan of action and I'm sticking to my guns. I'm done feeling sorry for myself I'm ready to put in some work. Honestly speaking I know that GOD will make a way when it seems Hopeless! I want my Boys! Both my Boys and I'm coming for them. Upon my release I'm going strait to probation then the YWCA. I'm done fooling around. I'm willing to do whatever it takes to get [C.G] and [R.] No Matter What! It's time for me to stop acting like a child and be the Mother my children need me to be. I plan on getting directly back into treatment & on my meds. Please don't count me out, I

12.

want what's mine! Hope to hear from you soon. [Mother] P.S. Even contemplated doing drug court if it means I can still have a chance [at] reunification. Thanks.

{¶ 34} Popovich tried to locate mother after her release from jail to no avail. Thereafter, mother never contacted Popovich nor did she engage in any services required by the case plan. This evidence is sufficient to support the trial court's finding that mother's repeated incarceration prevented her from providing care for the child.

{¶ 35} Seventh, the trial court held that father has failed to maintain contact with the court or LCCS and "has had no involvement with these proceedings as they have moved towards permanent custody." R.C. 2151.414(E)(16) allows a court to consider "[a]ny other factor the court considers relevant." The record contains sufficient evidence to support the trial court's finding.

{¶ 36} This court has previously explained that "the existence of only one of the factors under R.C. 2151.414(E) is sufficient to determine that a child cannot be placed with a parent within a reasonable time." *In re S.P.,* 6th Dist. Lucas No. L-14-1113, 2014-Ohio-5075, ¶ 32, quoting *In re R.L.*, 9th Dist. Summit No. 27214, 27233, 2014-Ohio-3117, ¶ 24. Upon review of the evidence, we find that the record contains competent, credible evidence supporting the trial court's conclusions that one or more of the factors enumerated in R.C. 2151.414(E) exist as to both mother and father.

{¶ 37} As set forth above, when determining whether a grant of permanent custody is in a child's best interest, the trial court "must consider all the relevant factors,

13.

including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence in his life, and any applicability of the factors in R.C. 2151.414(E)(7) to (11)." *In re E.M.*, 9th Dist Wayne No. 15CA0033, 2015-Ohio-5316, ¶ 13.

{¶ 38} Here, the trial court found that it is in the best interest of the child to award permanent custody to LCCS because the "child has no relationship with his parents and that he is placed in a foster home with a sibling and that this home may be considered as an adoptive home for both." In its decision, the court indicated "the child needs a permanent, stable home that cannot be achieved with a parent, but the child would be available for adoption by either the foster parent or a relative, if [LCCS] had an award of permanent custody, and that the guardian ad litem supports a plan of permanent custody to [LCCS] so that the child might be adopted."

{¶ 39} At the hearing Popovich opined that "[C.G.] needs permanency, stability. He needs a forever home." Popovich indicated that relatives had shown interest in adopting C.G., but that at the time of the hearing, C.G. was living in a foster home with a half-sibling. The foster home was being considered as a possible permanent home for both children. Family members had also shown an interest in the child.

{¶ 40} Guardian ad litem Veronica Szozda testified that she was appointed to the case on August 7, 2015. Less than two weeks later, she submitted a report indicating permanent custody to LCCS was in the best interest of the child. Szozda's concerns centered on the fact that mother had lost permanent custody of two other children, that

14.

that she had been unable to connect with father, and that neither father nor mother were participating in case plan services or had visited the child.

{¶ 41} After reviewing the evidence, we conclude that the decision of the trial court to award of permanent custody of C.G. to LCCS was supported by clear and convincing evidence. Accordingly, mother's sole assignment of error and father's first proposed assignment of error is not well taken.

II.

{¶ 42} In his second proposed assignment of error, counsel for father asserts that there was nothing in the record of any attempt to notify Father of the September 11, 2015 hearing through his probation officer, but only via regular mail at this last known address and publication by posting.

{¶ 43} It has long been held that "[d]ue to the relationship between parents and children, and because of the social consequences involved, a juvenile court cannot make a valid order changing temporary commitment of a child to a permanent commitment without service of notice upon the parent of the child, strictly in accordance with the law. *In re Cowling*, 72 Ohio St.3d 499, 501, 595 N.E.2d 470 (9th Dist.1991), citing *In re Frinzl*, 152 Ohio St. 164, 172, 87 N.E.2d 583 (1949).

{¶ 44} Juv.R. 16 requires LCCS to exercise reasonable diligence in its effort to serve parents with process when seeking to terminate parental rights. *In re Thompkins*, 115 Ohio St.3d 409, 410, 875 N..E.2d 582, 2007-Ohio-5238, ¶ 7. Juv.R. 16(A) states that a "summons shall be served as provided in Civil Rules 4(A), (C) and (D). 4.1, 4.2, 4.3,

15.

4.5 and 4.6." The rule further states that "when the residence of a party is unknown and cannot be ascertained with reasonable diligence, service shall be made by publication."

{¶ 45} Here, LCCS caseworkers testified that father was "whereabouts unknown" for most of the case. Evidence was presented that the notice of the disposition hearing was issued by regular mail to father's last known address and by publication. After father failed to appear at the hearing, father's attorney indicated that he had not heard from father for over five months, despite several attempts to contact him.

{¶ 46} Caseworker Popovich testified that she too had a hard time connecting with father during the pendency of the case: she went to his last known address, she sent letters to various addresses in her file, and she called several phone numbers she had been given. In regard to the latter, Popovich indicated that the numbers either did not work, she was unable to leave a message, or she left a message and never received a return call. In further effort to locate father, Popovich contacted father's probation officer.

{¶ 47} When Popovich was asked whether father ever contacted her, she stated, "[h]e did call me a couple of times and leave me a voice message. And when he did call me, whatever number he would leave and call from I would return messages to those calls. But, again, they would either be out of service or issues with the voicemail."

{¶ 48} Upon review of the record, we find that LCCS did use reasonable diligence in attempting to serve father with notice and had, in fact, contacted father's probation officer in an attempt to locate father. Thus, father's second proposed assignment of error is not well-taken.

16.

III.

{¶ 49} In his third proposed assignment of error, counsel for father asserts that the trial court erred in failing to provide the successor guardian ad litem sufficient time to conduct an independent investigation to determine the best interest of the child. Specifically, father asserts that the guardian ad litem failed to satisfy the minimum standards set forth in Sup.R. 48(D).

{¶ 50} The purpose of a guardian ad litem in a permanent-custody proceeding is "to protect the interest of the child and 'assist a court in its determination of a child's best interest.'" *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 14, citing R.C. 2151.281(B) and Sup.R. 48(B)(1). The guardian ad litem's role is to "perform whatever functions are necessary to protect the best interest of the child, including, but not limited to * * * [filing] any motions and other court papers that are in the best interest of the child[.]" R.C. 2151.281(I).

{¶ 51} "The Supreme Court of Ohio recently adopted Sup.R. 48 to govern guardian ad litem standards in Ohio and has indicated that this is the first rule that sets statewide standards regarding the appointment, responsibilities, training and reporting requirements of guardian ad litem." *In re K.G.*, 9th Dist. No. 10CA0016, 2010-Ohio-4399, ¶ 10. Sup.R. 48(D)(13) states:

> A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed

17.

recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:

(a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;

(b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;

(c) Ascertain the wishes of the child;

(d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;

(e) Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;

(f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;

(g)  Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

(h)  Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

(i)  Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

{¶ 52} Upon review of the record, we find the guardian ad litem satisfied the reasonable efforts requirements set forth in Sup.R. 48(D)(13).  Here, the guardian ad litem testified that she never spoke with father, despite several attempts to contact him.  She did, however observe the child in his placement and interview the foster parent.  Because the child was only an infant, he was unable to express his wishes.  In her report and recommendation that LCCS be granted permanent custody of C.G., the guardian ad litem states that she "learned of the background of the case from the court records, filings, the caseworker, and the foster mother. "  She further states that father never visited the child, neither father or mother were participating in any services, and that LCCS hold permanent custody of mother's older child and expressed an interest in adopting both children.

19.

{¶ 53} We find the guardian ad litem did meet the minimum standards of Sup.R. 48(D)(13). The trial court did not abuse its discretion when it considered the guardian ad litem's report. Thus, father's third proposed assignment of error is not well taken.

{¶ 54} On consideration, the judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Appointed counsel's motion to withdraw as counsel for father is granted. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.