[Cite as *In re Ke.R.*, 2017-Ohio-7533.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Ke.R., K.P., Ki.R.

Court of Appeals Nos. L-17-1092
L-17-1093

Trial Court Nos. JC 16255659
JC 16254000

<u>**DECISION AND JUDGMENT**</u>

Decided: September 7, 2017

* * * * *

Adam H. Houser, for appellant.

Bradley W. King, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} This is a consolidated case in which appellant, E.R., appeals the March 22, 2017 judgment of the Lucas County Court of Common Pleas, Juvenile Division, where the court granted permanent custody of her three children to appellee, Lucas County Children Services ("LCCS"). Finding no error in the judgment, we affirm.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

1. The Guardian Ad Litem did not perform her duty under the Rules of Superintendence and her testimony should not have been allowed and should have been stricken.

2. The Finding that the Child (sic) Could not be Placed with Appellant Within a Reasonable Time was Against the Manifest Weight of Evidence.

## Facts

{¶ 3} This consolidated appeal is from case Nos. JC 16255659 and JC 16254000, of the Lucas County Court of Common Pleas, Juvenile Division.

{¶ 4} Case No. JC 16254000 commenced in March 2016, when appellee, LCCS, sought protective services for appellant's children, K.P. and Ki.R. The complaint was filed based on an LCCS caseworker, Katie Bertsch, alleging the children were neglected and abused. The day after the filing, the magistrate granted interim temporary custody of the children to LCCS.

{¶ 5} Bertsch knew of a family history of abuse and neglect because she had investigated concerns regarding K.P. as far back as September 2014. In September 2014, the father of K.P. ("father") had physically abused both appellant and K.P., who was born in August 2013. Resulting from the 2014 abuse, K.P. was adjudicated dependent, neglected and abused, and a no-contact order was put in place to protect appellant and K.P. from father. Ki.R. was born in February 2015.

2.

**{¶ 6}** In July 2015, protective services were terminated for K.P., however, the court ordered that the no-contact order remain in effect. In September 2015, appellant and father participated in mediation at the Lucas County Child Support Enforcement Agency ("LCCSEA"), and appellant did not inform the agency about the no-contact order. Because it lacked knowledge of the order, LCCSEA proceeded to develop a shared parenting plan for appellant and father. Father was granted unsupervised time, and reports indicate appellant later stated she felt it was not her responsibility to inform the authorities of the no-contact order that remained in effect.

**{¶ 7}** In March 2016, LCCS received a referral to investigate the family again after father choked Ki.R. unconscious. This is when Bertsch began her investigation in case No. JC 16254000. Appellant had called police to her home. When they arrived, Ki.R. and father were outside. The child was reported to appear lifeless. Ki.R. was taken to the hospital. No adults were with him during his admission to the Pediatric Intensive Care Unit. While in jail for the assault, father admitted to trying to kill Ki.R. by choking him, and also admitted to trying to kill K.P. in the past.

**{¶ 8}** Eventually LCCS learned and reported that appellant had allowed father into her home on the occasion he attempted to choke and kill Ki.R. Appellant had done so, despite the fact that the day before father had choked appellant unconscious and dangled K.P. over a bannister.

**{¶ 9}** Father was arrested and sentenced to 30 months incarceration for the choking incident, and appellant was offered case plan services, including substance

3.

abuse, mental health, parenting, and housing services. She also underwent a psychiatric evaluation which she completed and was diagnosed with "Adjustment Disorder with Depressed Mood." Nevertheless, appellant did not pursue mental health services. The magistrate granted temporary custody of K.P. and Ki.R. to LCCS in April 2016.

{¶ 10} Case No. JC 16255659 was filed in May 2016, after Ke.R. was born and LCCS sought protection for the child, within three days from her birth. The magistrate granted interim temporary custody and, then, granted temporary custody of the child in August 2016. The two cases involving the children were then consolidated.

{¶ 11} LCCS caseworker, Christina DeSilvis, investigated appellant's completion of services and living conditions. DeSilvis testified that she recommended appellant maintain contact with her domestic violence group and voluntarily pursue parenting programs. Appellant was reported to deny the need to maintain contact with the domestic violence group. Appellant was also reported to have expressed an interest in the parenting programs, but the record indicates she never enrolled.

{¶ 12} DeSilvis testified that appellant lived with her father, but that appellant always met her on the porch, which did not allow a thorough investigation of the premises. To DeSilvis this refusal was most alarming when she offered to do a safety check to assess whether the home environment was child-safe, but was denied access by appellant. In August 2016, LCCS decided it would pursue permanent custody of the children.

4.

{¶ 13} Steven T. Casiere was appointed as guardian ad litem ("GAL1") for the children. GAL1 filed a report in which he recommended LCCS be given temporary custody of the children. The recommendation was based on GAL1's review of the "LCCS Complaint, LCCS file, criminal records, the juvenile court file regarding the prior cases and pediatric records." GAL1 also spoke with DeSilvis, appellant, the children's foster caregivers, and "staff at Family Care Center," during his investigation. GAL1 had observed the children at their placement, on two occasions, and observed the children with mother during a visitation at LCCS.

{¶ 14} In September 2016, GAL1 withdrew from the case, and the court then appointed Allma-Tadema Miller ("GAL2"). GAL2's investigation consisted of contacting appellant, the foster caregivers, DeSilvis, appellant's maternal grandmother, and the children. GAL2 did not contact father, but her report did evidence review of his case file and conviction.

{¶ 15} GAL2 reported that she had difficulties meeting with appellant. For instance, GAL2 testified that after three attempts to arrange a meeting, to observe appellant with the children during visitation, appellant did not show. GAL2 also reported reviewing prior filings related to the children, GAL1's report, LCCS's case file, criminal records for appellant and father, "Centralized Drug Testing records" for appellant and father, and medical records for K.P. and Ki.R, in her investigation. As of February 2017, GAL2 recommended that permanent custody to LCCS would be in the best interest of the children.

5.

{¶ 16} LCCS moved for permanent custody of the children. A hearing to address the motion was scheduled for March 2017. At the hearing, the court heard testimony from Bertsch, DeSilvis, and Miller. No other witnesses testified and, although duly served and notified, appellant did not appear at the hearing. During the hearing the court admitted into evidence, without objection, certified judgment or docket entries regarding the family's past and current juvenile neglect cases, father's conviction for attempted felonious assault on Ki.R., father's conviction for domestic violence against appellant, and appellant's charges for drug abuse. GAL2's report was also admitted into evidence without objection.

{¶ 17} The court journalized the judgment on March 22, 2017. In the entry, the court held that permanent custody of K.P., Ki.R., and Ke.R. was awarded to LCCS for adoptive placement and planning, and that all of appellant's parental rights in and to the children were terminated, except her right to appeal. Appellant timely appealed.

**First Assignment of Error**

{¶ 18} Appellant first asserts the trial court erred in admitting GAL2's testimony and report because GAL2 failed to satisfy minimum standards set forth in Sup.R. 48(D). Appellee contends GAL2 satisfied the reasonable effort requirements under Sup.R. 48(D).

{¶ 19} The purpose of a guardian ad litem in a permanent-custody proceeding is "to protect the interest of the child and 'assist a court in its determination of a child's best interest.'" *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 14, citing

6.

R.C. 2151.281(B) and Sup.R. 48(B)(1). The guardian ad litem's role is to "perform whatever functions are necessary to protect the best interest of the child[.]" *See* R.C. 2151.281(I).

{¶ 20} Sup.R. 48 was adopted "to govern guardian ad litem standards in Ohio and * * * is the first rule that sets statewide standards regarding the appointment, responsibilities, training and reporting requirements of a guardian ad litem." *In re K.G.*, 9th Dist. Lorain No. 10CA0016, 2010-Ohio-4399, ¶ 10.

{¶ 21} Sup.R. 48(D)(13) specifically states:

A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:

(a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;

(b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;

7.

(c) Ascertain the wishes of the child;

(d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;

(e) Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;

(f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;

(g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

(h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

(i) Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

*See*, *e.g.*, *In re C.G.*, 6th Dist. Lucas Nos. L-15-1256, L-15-1257, 2016-Ohio-375, ¶ 51.

**{¶ 22}** As an instructive case we point to *In re E.S.*, in which we found no error in admitting a guardian ad litem's testimony and report despite acknowledging that the

8.

guardian's investigation could have been more expansive. *See In re E.S.*, 6th Dist. Ottawa Nos. OT-14-008, OT-14-009, OT-14-011, OT-14-012, 2014-Ohio-3067, ¶ 64. In *In re E.S.*, we recognized that Sup.R. 48(D)(13) does not have the "force of law," since it is only intended to be a general guideline "for the conduct of the courts and do[es] not create substantive rights in individuals or procedural law."

{¶ 23} Based on this recognition and two dispositive considerations, it was appropriate for the guardian's testimony and report to be admitted and considered.

{¶ 24} First, we noted the extent of the guardian's investigation and how "there were tasks described in Sup.R. 48(D)(13) that were performed." *Id*. at ¶ 65. In that regard, the record reflected that the guardian interviewed the parents, communicated with the children's service agencies at issue, reviewed the case plan, reviewed discovery, reviewed the court record, and considered the children's interest to the extent possible in consideration of the fact that they were too young to offer meaningful input. *Id*.

{¶ 25} Second, we stated how the guardian's testimony "was brief and was certainly not the exclusive factor driving the court's decision." *Id*. at ¶ 66. The record reflected the guardian was only one of many witnesses and that the court did not place much emphasis on the guardian's testimony or recommendation. Further, we found the guardian was subject to a challenging cross-examination and there was evidence on record to allow the trial court to "believe or disbelieve [the] testimony, to assign it whatever weight it deemed appropriate, and to consider it in the context of all the other evidence[.]" *Id*.

9.

{¶ 26} Consistent with *In re E.S.*, we found minimum standards of Sup.R. 48(D)(13) met in another demonstrative case, *In re C.G.*, 6th Dist. Lucas Nos. L-15-1256, L-15-1257, 2016-Ohio-375. In that case, we held as such despite the argument that a successor guardian ad litem had insufficient time to conduct an independent investigation to properly determine the best interest of the child. *Id.* at ¶ 49.

{¶ 27} In *In re C.G.*, a second guardian was appointed during the proceedings, who did not specifically interview the father or child in reaching a recommendation or drafting a report. Nevertheless, based on the guardian's testimony, the record reflected that the child was only an infant who was unable to express wishes, and that the guardian made several attempts to contact and arrange a meeting with the father, to no avail. *Id.* at ¶ 52. The guardian's report and recommendation were stated to be based on "background of the case from the court records, filings, the caseworker, and the foster mother." Based on this limited investigation, the guardian nevertheless found reasonable grounds to conclude that the father never visited the child, that neither parent participated in services, and that the children's services agency had adopted an older sibling of the child and was in position to adopt the child at issue. We, therefore, found the investigation was sufficient to satisfy the reasonable effort requirements.

{¶ 28} Here, based on review of the record, consistent with *In re E.S.* and *In re C.G.*, we find that GAL2 satisfied the requirements set forth in Sup.R. 48(D)(13) before offering a report and testifying.

10.

{¶ 29} In discussing GAL2's testimony, the March 22, 2017 trial court judgment entry in pertinent part states:

> At the close of all evidence, the Court heard testimony from Allma-Tadema Miller, [GAL2] for the children. Ms. Miller testified that she had been involved with the case since September of 2016. She testified she conducted a separate investigation into the case and had interviewed [appellant], family members, and LCCS personnel. She testified she also reviewed documents concerning this case. Ms. Miller had difficulty meeting with [appellant] and had attempted to do so at the visits set up for [appellant] and the children. [Appellant] did not attend these visits, but the two were able to meet three weeks before this trial after Ms. Miller contacted [appellant]'s step-mother.

> Ms. Miller testified that [appellant] was reluctant to acknowledge the history of domestic violence between her and [father]. [Appellant] also minimized concerns for violent behavior by blaming it on [father]'s substance abuse.

> At the conclusion of her testimony, Ms. Miller testified that she believed an award of permanent custody was in the best interest of the children. She testified that her recommendation was based on a totality of the circumstances, and she has serious concerns for the safety of the children in their parents' care.

{¶ 30} The judgment entry eventually follows with, "[t]he Court finds that, after performing a separate and independent investigation, the guardian ad litem recommends that permanent custody is in the best interest of the children."

{¶ 31} Based on our review of the transcript of the March 2017 hearing, GAL2 confirmed that she had limited contact with appellant, and that appellant missed three visitation appointments on the days GAL2 was there to observe. These were scheduled for Saturdays, after appellant had requested that Saturday be her visitation day. Further, GAL2 testified how she visited the children at their placement residence with the foster caregivers, and that the children were thriving in the healthy environment. GAL2 discussed her suspicions that appellant could not keep the children safe, based on enabling father's past neglect and "significant" abuse, appellant's ongoing drug use and pattern of domestic violence, and appellant's lack of initiative in taking responsibility for her past actions or mental health problems.

{¶ 32} Lastly, GAL2's written report indicates that GAL2 interviewed appellant, her maternal grandmother, the children to the extent possible, LCCS, and the foster caregivers. The report also indicates GAL2 reviewed "prior filings," "prior GAL report," "LCCS Case file," "Criminal records for Father and Mother," "Centralized Drug Testing records for Mother and Father," and "Mercy Medical records for K.P. and Ki.R." The report discusses the disturbing case history of the children, the current safe and healthy (foster care) placement of the children, the fact that the foster caregivers are interested in adopting all three siblings, and the lack of parental progress displayed by appellant's

12.

inconsistent completion of case plan services and scheduled visitations. The report also highlights how the children are all too young to express sincere wishes regarding their placement.

{¶ 33} Therefore, based on review of the entire record, including the trial court judgment, the transcript of the March 2017 hearing, and GAL2's written report, we find tasks described in Sup.R. 48(D)(13) were performed by GAL2, and that GAL2's testimony and report were not the exclusive factors driving and supporting the court's decision. *See In re E.S.*, *supra*. Moreover, we find that despite GAL2 being appointed with only seven months left in the case, her investigation provided reasonable grounds to support her findings and the conclusion that LCCS should be granted permanent custody. *See In re C.G.*, *supra*.

{¶ 34} Consequently, we can neither say that GAL2 failed to satisfy the minimum standards set forth in Sup.R. 48(D), nor that the trial court erred in admitting and giving consideration to GAL2's testimony and report.

{¶ 35} Accordingly, appellant's first assigned error is not well-taken.

**Second Assignment of Error**

{¶ 36} Appellant next argues the award of permanent custody to LCCS was in error by challenging the trial court's finding that her children could not be placed with her within a reasonable time. Appellee contends the grant of custody was supported by clear and convincing evidence.

13.

**{¶ 37}** A trial court can award permanent custody to a public children's services agency upon finding that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent," so long as the court also determines that the award of permanent custody is in the child's best interests. *See* R.C. 2151.414(B)(2).

**{¶ 38}** Under R.C. 2151.414(E), a finding, by clear and convincing evidence, that one of the conditions listed in R.C. 2151.414(E)(1)-(16) exists is necessary to establish that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996), syllabus. In turn, R.C. 2151.414 (D) lists relevant factors to be considered by the court in determining whether an award of permanent custody to a public children's services agency is in the best interest of the child.

**{¶ 39}** Clear and convincing evidence is evidence that will "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

### A. Placed Within a Reasonable Time

**{¶ 40}** "[T]he existence of only one of the factors under R.C. 2151.414(E) is sufficient to determine that a child cannot be placed with a parent within a reasonable time." *In re S.P.*, 6th Dist. Lucas No. L-14-1113, 2014-Ohio-5075, ¶ 32, quoting *In re R.L.*, 9th Dist. Summit Nos. 27214, 27233, 2014-Ohio-3117, ¶ 24.

14.

**{¶ 41}** In this case, we will only address the four factors under R.C. 2151.414(E) which were explicitly relied on in the trial court judgment against appellant.

1. R.C. 2151.414(E)(1) provides:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

**{¶ 42}** Here, the judgment entry states that appellant "has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home." This was found by the court to be apparent "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problems that initially caused the children to be placed outside the home[.]"

**{¶ 43}** Based on our review of the testimony on record, we find there is clear and convincing evidence to support this finding. Specifically, testimony and other evidence

reveal K.P. was subject to his father attempting to kill or severely injure him as far back as September 2014. Although a no-contact order was put in place then, appellant still allowed the father to see the child, even though father posed an obvious threat to the child's well-being. Appellant even failed to report the no-contact order to LCCSEA, because she was not aware it was her responsibility to report the order and protect her children.

{¶ 44} Further, appellant enabled father to physically harm Ki.R. because, when father did so by choking the child in an effort to kill him, appellant was fully aware of father's propensity to commit physical violence against her and the children, yet she left father alone with Ki.R. The record actually reveals that the day before choking Ki.R., father dangled K.P. over a bannister and choked appellant until she collapsed, and that father had admitted to attempting to kill K.P. numerous times prior to that occasion. We find adequate support for the trial court's finding that appellant failed to protect her children and lacked awareness, and these initially caused the children to be placed outside her home.

{¶ 45} We likewise find support for the court's finding that appellant has not changed her parental conduct to allow her to resume and maintain parental duties. For instance, despite appellant participating in recommended case plan services, the record reflects she was inconsistent with the services because she did not fully or voluntarily participate in parenting and/or drug therapy. She actually failed drug tests and was charged and arrested for possession during the time period of the proceedings, in spite of

16.

her claiming and recognizing that the children's father was a threat due to his drug use. There is also evidence she did not maintain stable employment or independent living arrangements and, thus, we find appellant has not substantially remedied the conditions that led to the removal of K.P., Ki.R., and Ke.R.

{¶ 46} Consequently, we find ample evidence to support the trial court's findings under R.C. 2151.414(E)(1).

2. R.C. 2151.414(E)(4) provides: "The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"

{¶ 47} Here, the trial court judgment entry states that appellant "has demonstrated a lack of commitment toward the children by failing to regularly visit with them when able to do so." The record supports this finding because an LCCS caseworker testified that up until September 2016, appellant was consistent with her visits. However, according to testimony of LCCS and GAL2, starting October 2016, appellant became inconsistent with the visits. GAL2 actually testified that she and appellant arranged three visits in which appellant had an opportunity to show interaction with the children during visitation, but that appellant failed to attend all three. LCCS also noted that appellant had not shown that she had an adequate permanent home for the children and, although appellant lived with her father, during their investigation appellant did not allow LCCS into her father's residence to view the conditions and appropriateness of the home.

17.

{¶ 48} In terms of more recent behavior, an LCCS caseworker explained how appellant was placed "on an hour show," which required appellant to "arrive and check in for her visit an hour prior to visitation start time." This was done to ensure appellant was going to attend before the foster caregivers went out of their way to bring the children to visitation. Appellant was not present at the March 2017 hearing to explain her absences and, thus, we cannot say she was unable with justification to visit on the occasions she missed.

{¶ 49} Accordingly, we find clear and convincing evidence supporting the trial court's finding under R.C. 2151.414(E)(4).

3. R.C. 2151.414(E)(14) provides: "The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."

{¶ 50} Here, the judgment entry states that appellant "is unwilling to prevent the children from suffering physical or emotional abuse." As articulated above in addressing R.C. 2151.414(E)(1), we find ample evidence appellant failed to protect her children and lacked awareness as regards their physical, mental and emotional well-being.

{¶ 51} Accordingly, the trial court's finding under R.C. 2151.414(E)(14) is supported by the record.

18.

4. R.C. 2151.414(E)(16) provides: "Any other factor the court considers relevant."

**{¶ 52}** Here, the judgment entry states that appellant "failed to participate in the permanent custody trial despite having previously attended court appearances and being duly served and notified.

**{¶ 53}** At the March 2017 hearing the court engaged in discussion with appellant's counsel regarding appellant's absence:

> THE COURT: Thank you. All right. Ms. Stoner, let's start with your client.
>
> COUNSEL: Your Honor, I do not know where my client is this morning. She has been present at other court hearings. Most recently the February pretrial date. So I have no explanation for her nonappearance.
>
> THE COURT: She is aware of today's date?
>
> COUNSEL: Yes, she is, Your Honor. And since she was at court recently and I'm aware of her wishes—
>
> THE COURT: You can proceed?
>
> COUNSEL: I can proceed.
>
> THE COURT: Okay. Maybe she's just late. I would say for the record that it is 9:33 and this case was scheduled to begin at 9 o'clock. So all right. * * *

**{¶ 54}** Based on appellant's counsel statement that appellant knew of the important hearing yet failed to attend, we find there is support for the trial court's finding.

Such a failure to appear reflects poorly on appellant's desire to regain custody, to display responsibility and, further, is evidence she lacked care in supporting her legal position.

{¶ 55} Consequently, we find clear and convincing evidence supports the finding under R.C. 2151.414(E)(16), and weighing the above-mentioned factors under R.C. 2151.414(E) provides sufficient grounds for us to determine that K.P., Ki.R., and Ke.R. cannot be placed with appellant within a reasonable time.

## B. The Children's Best Interest

{¶ 56} When determining whether a grant of permanent custody is in a child's best interest, the trial court "must consider all the relevant factors, including those enumerated in R.C. 2151.414(D):  the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence in his life, and any applicability of the factors in R.C. 2151.414(E)(7) to (11)." *In re E.M.*, 9th Dist. Wayne No. 15CA0033, 2015-Ohio-5316, ¶ 13.

{¶ 57} In this case, we will individually address the three factors under R.C. 2151.414(D) which were relied on in the trial court judgment against appellant.  We note that although the trial court stated the factors separately, it only provided the following paragraph addressing the three factors collectively.

> The children are placed together and are thriving.  The children are getting any and all services they require.  They have not been able to visit consistently with their parents due to [father]'s incarceration and [appellant]'s failure to attend her visits regularly.  The children are in need

of a legally secure and permanent placement and such a placement cannot occur without an award of custody to LCCS.

1. R.C. 2151.414(D)(1)(a) provides: "The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child[.]"

{¶ 58} Here, and as articulated above, we find ample support for the trial court's concern that the interaction and interrelationship of the children with their parents jeopardizes the children's safety and well-being. The record reflects that the foster caregivers are much better suited to provide a child-safe and permanent home, to provide adequate care, to meet the needs of the children, and to nurture and foster a healthy environment and upbringing for all three children. The caregivers want to adopt all three children, allowing the children to be raised together as a family unit.

{¶ 59} Consequently, we find clear and convincing evidence which supports the trial court's finding under R.C. 2151.414(D)(1)(a).

2. R.C. 2151.414(D)(1)(c) provides:

> The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive

21.

twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state[.]

{¶ 60} Here, LCCS filed its complaint in dependency, neglect, and abuse for K.P. and Ki.R. on March 8, 2016. The next day the magistrate granted interim temporary custody of the children to LCCS. On May 17, 2016, Ke.R. was born and LCCS sought protective services for her three days later. The magistrate granted interim temporary custody of Ke.R. to LCCS on May 25, 2016.

{¶ 61} The children have been in custody for purposes of R.C. 2151.414(D)(1)(c) since LCCS was granted interim temporary custody. As reflected in the transcript of the March 2017 hearing the court, in addressing this factor, stated: "(D)(1)(c) I believe these children have been in the care of the Agency for 12 months now out of the last 22 months and so I am going to indicate that (D)(1)(c) applies." This finding was in error because although the court was close in its estimation, none of the children were in LCCS's custody for 12 months at that point in time.

{¶ 62} Thus as of the date of the March 2017 hearing, we cannot say that the custodial history of the children satisfied the requirements of R.C. 2151.414(D)(1)(c). 3. R.C. 2151.414(D)(1)(d) provides: "The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"

22.

**{¶ 63}** Here, the children's need for a legally secure permanent placement would be satisfied with permanent custody to LCCS because the current foster caregivers intend on adopting all three children into their healthy, child-safe home environment. There is no doubt these young children are in need of stable placement, and we find no evidence in the record to reveal that the children would otherwise have such healthy, safe permanency without LCCS intervention, as appellant has not provided sufficient evidence to the contrary. Appellant's second assigned error is found not well-taken.

**{¶ 64}** Accordingly, there is clear and convincing evidence that legally secured placement of the children cannot be achieved without a grant of permanent custody to LCCS and, in also considering R.C. 2151.414(D)(1)(a) as analyzed above, we cannot say it was error to award permanent custody to LCCS in the children's best interest.

## Conclusion

**{¶ 65}** The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE