[Cite as *In re E.M.*, 2015-Ohio-5316.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE )

IN RE: E.M.

C.A. No. 15CA0033

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No. 13-0631-AND

DECISION AND JOURNAL ENTRY

Dated: December 21, 2015

MOORE, Judge.

{¶1} Appellant, Tia M. ("Mother"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, E.M., and placed the child in the permanent custody of Wayne County Children Services ("CSB"). This Court affirms.

I.

{¶2} Appellant is the mother of E.M., born April 24, 2013. The father of the child is not a party to this appeal. This case is before the Court following reversal and remand. *See In re E.M.*, 9th Dist. Wayne No. 14AP0030, 2015-Ohio-641.

{¶3} CSB initially became involved with the family when Mother delivered the baby and the hospital called the agency with concerns about the parents' hygiene, emotional well-being, and limited intellectual functioning. The parents had been living in "Tent City," a homeless encampment near Wooster, Ohio. Under a voluntary safety plan created upon their

release from the hospital, Mother and E.M. stayed with a friend for a few days and then with the maternal grandmother.

{¶4} CSB filed a complaint in juvenile court on May 3, 2013. The agency was granted emergency temporary custody because there was a lack of bonding between Mother and E.M. and also because Mother planned to leave the home of the maternal grandmother and return to "Tent City" with E.M. Subsequently, the trial court adjudicated E.M. to be a dependent child and granted temporary custody to the agency. The child was placed in foster care.

{¶5} Mother's reunification case plan required her to address parenting, mental health, substance abuse, housing, and the need to obtain stable income through benefits or employment. Mother enrolled in a parenting class and scheduled evaluations, but did not attend those appointments. She did not secure housing or stable income. Mother did not complete any part of her case plan even though CSB offered her transportation. In addition, Mother seldom visited with her child. Her last visit with E.M. was on October 21, 2013.

{¶6} At the permanent custody hearing, E.M.'s father surrendered his parental rights to the child. Father had no contact with E.M. since that time. Following that hearing, the trial court granted permanent custody to CSB in April 2014. In February 2015, this Court reversed the decision of the trial court upon a careful examination of the record because CSB failed to present clear and convincing evidence that Mother had abandoned E.M. *See In re E.M.*, 2015-Ohio-641, at ¶ 24.

{¶7} In October 2014, Mother moved to Oklahoma with a new partner while E.M. remained in foster care in Ohio. According to the caseworker, Mother did not tell her that she planned to move, did not provide her with a reason for the move, and did not provide her with new contact information. The caseworker testified that she only learned that Mother moved

when she went to see Mother at her last known address in "Tent City" and another resident of "Tent City" told her about Mother's move. There is no evidence that Mother's decision to leave E.M. and move to Oklahoma with a new partner was anything but her own choice.

{¶8} While Mother was served with notice of the new permanent custody hearing and was represented by appointed counsel at the hearing, she did not attend the hearing herself. The father of E.M. was provided with notice of the hearing by publication. He did not attend the hearing, but was also represented by appointed counsel. Following the hearing, the trial court again granted permanent custody of E.M. to CSB. Mother now appeals and assigns three errors for review. Because the assigned errors are related, we address them together.

## II.

### Assignment of Error I

THE WAYNE COUNTY JUVENILE COURT ERRED WHEN IT FOUND E.M. WAS ABANDONED.

### Assignment of Error II

THE WAYNE COUNTY JUVENILE COURT ERRED IN [ITS] ALTERNATIVE FINDING WHEN IT FOUND THAT E.M. COULD NOT OR SHOULD NOT BE PLACED WITH MOTHER WITHIN A REASONABLE TIME.

### Assignment of Error III

THE WAYNE COUNTY JUVENILE COURT ERRED BY GRANTING THE STATE'S MOTION FOR PERMANENT CUSTODY BECAUSE ITS DETERMINATION THAT THE BEST INTERESTS OF E.M. WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶9} R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) one of the

enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb* 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10} Through her three assignments of error, Mother contends that the trial court erred in regard to both prongs of the permanent custody test. In her first two assignments of error, Mother challenges the first prong finding by claiming that the trial court erred in finding that E.M. was abandoned and that E.M. could not be placed with her within a reasonable time or should not be placed with her. *See* R.C. 2151.414(B)(1)(b) and 2151.414(B)(1)(a). It is important to note that in regard to the determination that the child could not be placed with a parent within a reasonable time or should not be placed with a parent, the trial court made two findings: the parents failed to substantially remedy the conditions that initially caused the child to be placed outside the home and the parents demonstrated a lack of commitment toward the child. *See* R.C. 2151.414(E)(1) and 2151.414(E)(4). As explained below, Mother has failed to present an argument regarding both of the findings under R.C. 2151.414(E). Finally, in her third assignment of error, Mother asserts that the trial court finding that permanent custody is in the best interest of the child is against the weight of the evidence.

First Prong of the Permanent Custody Test

{¶11} The trial court made three findings regarding the first prong of the permanent custody test: (1) abandonment, under R.C. 2151.414(B)(1)(b); (2) the parents failed to remedy the conditions that caused the child to be placed outside the home, under R.C. 2151.414(E)(1); and (3) the parents demonstrated a lack of commitment toward the child, under R.C.

2151.414(E)(4). According to the language of the statute, a finding under any one of the factors under R.C. 2151.414(E) compels the trial court to enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *See* R.C. 2151.414(E).

{¶12} This Court has often explained that "[t]he factors contained within R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and only one must be met in order for the first prong of the permanent custody test to be satisfied." *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 11. While Mother challenges the trial court findings that the parents abandoned E.M. and that they have failed to remedy the conditions that initially caused the child to be removed from his home, Mother has made no argument regarding the trial court's alternative finding that the parents demonstrated a lack of commitment toward the child, pursuant to R.C. 2151.414(E)(4), although she has mistakenly labeled the verbatim language of R.C. 2151.414(E)(1) as R.C. 2151.414(E)(4) in her appellate brief. Thus, notwithstanding any challenges to the findings of abandonment or the failure to remedy conditions, the first prong of the permanent custody test is satisfied by the alternative finding, made by the trial court and left unchallenged by Mother, that the parents demonstrated a lack of commitment toward the child. Because the record supports an alternative finding on the first prong of the permanent custody test and Mother has not challenged that finding, Mother has failed to demonstrate prejudice regarding the trial court's first prong finding. Accordingly, Mother's first two assignments of error are overruled.

Best interest of the child

{¶13} When determining whether a grant of permanent custody is in a child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in

R.C. 2151.414(D): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence in his life, and any applicability of the factors in R.C. 2151.414(E)(7) to (11). *See In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3, (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

{¶14} The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the child. Mother seldom visited with her child while she resided in Ohio. She has not seen him since she moved to Oklahoma in the fall of 2014. Mother attended only seven or eight visits with her child since he was removed from her care. The caseworker observed two of those visits. She described Mother as being nervous and unsure of herself with the child. Mother got frustrated with E.M. if he got fussy. Most importantly, the caseworker stated that there was no bond between them. She noted that at one visit, it was the maternal grandmother who held the child and not Mother. The caseworker testified that Mother failed to engage in any of the services that would have facilitated a bond with E.M.

{¶15} At the same time, E.M. was described as being bonded to his foster parents. He smiles and goes to them for comfort and for answers.

{¶16} The maternal grandmother had initially sought custody of E.M., but after the case was remanded, she reconsidered that position. The CSB relative home assessor was preparing to reassess maternal grandmother's home at the request of Mother's attorney. The assessor explained, however, that the maternal grandmother had concerns about the longevity of a placement with her and about the bond already created between E.M. and the foster family. The

maternal grandmother reportedly asked to speak to the foster family. Ultimately, the maternal grandmother decided not to pursue custody of E.M. because she was satisfied with the home in which he was placed. There were no other relatives with whom the child had a significant relationship.

{¶17} The wishes of this young child were conveyed by the guardian ad litem. The guardian concluded that it would be in the best interest of the child to be placed in the permanent custody of CSB.

{¶18} The third best interest factor requires consideration of the custodial history of the child. Upon release from the hospital, E.M. and Mother resided with a friend for a few days and then with the maternal grandmother. After a few days, Mother wanted to take the child and move back to "Tent City." E.M. was soon placed in foster care. His first foster home was not a potential long-term placement, and E.M. was placed in his current foster home in July 2014. The current foster parents are interested in adopting E.M. should permanent custody be granted.

{¶19} Regarding the fourth best interest factor, there was evidence before the trial court that the child was in need of a legally secure permanent placement and that there were no suitable friends or relatives willing and able to provide for his care. The agency investigated the possibility of placement with the maternal grandfather, the maternal great grandmother, and a maternal aunt, but ultimately, none of them chose to pursue custody.

{¶20} The record does not demonstrate that the trial court lost its way and created a manifest miscarriage of justice in finding that permanent custody is in the best interest of E.M. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The third assignment of error is overruled. Mother has not demonstrated that the trial court erred in granting permanent custody of E.M. to CSB.

**{¶21}** Mother's three assignments of error are overruled.

III.

**{¶22}** Mother's three assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

MICHELLE FINK, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and MELODY L. BRIAND, Assistant Prosecuting Attorney, for Appellee.