[Cite as *In re B.H.*, 2018-Ohio-3207.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re B.H.

Court of Appeals No. L-18-1059

Trial Court No. JC 17261214

<u>**DECISION AND JUDGMENT**</u>

Decided:  August 8, 2018

* * * * *

Laurel A. Kendall, for appellant.

Bradley W. King, for appellee.

* * * * *

**JENSEN, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, awarding permanent custody of B.H. to Lucas County Children Services ("LCCS") and terminating the parental rights of the biological parents.  For the reasons that follow, we affirm the decision of the trial court.

**{¶ 2}** B.H. was born at Monroe Regional Hospital in Monroe, Michigan, on March 9, 2017, to A.H. ("mother"). Paternity of the child has never been established.

**{¶ 3}** On March 10, 2017, LCCS received a referral indicating that when mother arrived at the hospital, she stated that she was shopping in the area. However, there were no shopping areas near the hospital. The referral further indicated that when the maternal grandmother arrived at the hospital to visit the newborn baby, the grandmother asked the hospital to not leave B.H. alone with mother.

**{¶ 4}** On March 13, 2017, LCCS filed a complaint in dependency and motion for shelter care hearing. In its complaint, LCCS alleged that three of mother's children were removed from the home in 2015 because the children had taken mother's psychotropic medication. The complaint further alleged that mother had been diagnosed with bipolar disorder and possible schizophrenia, had a past psychiatric hospitalization, and had stopped taking prescribed medication. Legal custody of mother's three older children was awarded to a relative on September 15, 2015. LCCS further alleged, "Mother admitted to [a LCCS caseworker] that she hears 'voices' but she tries to ignore them."

**{¶ 5}** A shelter care hearing was held on March 13, 2017, and LCCS was granted emergency custody. The case plan filed April 13, 2017, required mother to follow all recommendations of her mental health service provider and complete an agency approved parenting program.

**{¶ 6}** An administrative review progress report was filed with the court on September 15, 2017. The report explained that in October 2016, legal custody of

2.

mother's three older children was transferred to one of mother's relatives because of mother's mental health issues.

{¶ 7} At the time of the report, mother was receiving mental health services at Zepf Center. LCCS believed that mother had not taken her prescribed psychotropic medication for over a year. She had not yet been referred to parenting classes due to a "lack of progress" in mental health services. The report indicated that mother missed two visits with B.H. When she did attend, she typically left the child in her car seat. During one visit, mother tried to feed B.H. chicken and suckers even though child was less than six months old.

{¶ 8} On October 30, 2017, LCCS filed a motion for permanent custody. A hearing was held January 25, 2018. Counsel for mother, counsel for LCCS, counsel for CASA, the LCCS caseworker, CASA for B.H., and the LCCS supervisor were present. Mother failed to appear despite indicating to her attorney that she would appear. Service was perfected for "John Doe" father and the named alleged father. At the close of the hearing, the trial court granted LCCS's motion for permanent custody. Mother appealed.

## First Assignment of Error

{¶ 9} In her first assignment of error, mother alleges:

The trial court erred in finding that appellee [LCCS] had made a reasonable effort to reunify the minor child with [mother], when LCCS filed for permanent custody only six months after the child was adjudicated.

3.

{¶ 10} Mother argues because the child had not been in the agency's custody for two years or longer, she "still qualified for temporary custody." She claims that the trial court "had discretion to extend temporary custody for several more months, at least, to allow mother additional time to engage in mental health services and to take a parenting class."

{¶ 11} In its complaint, appellee alleged that B.H. could not be placed with her parents within a reasonable time pursuant to R.C. 2151.414(B)(1)(a). Thus, the agency was not required to wait until the child had been in temporary custody for the 12 months required when a petition is filed under R.C. 2151.414(B)(1)(d) grounds. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 27. We find no merit to mother's first assignment of error.

## Second Assignment of Error

{¶ 12} In her second assignment of error, mother asserts:

The decision granting custody of the minor child to [LCCS] was against the manifest weight of the evidence.

{¶ 13} Under certain circumstances, a trial court can award permanent custody to a public children's services agency upon finding that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents," so long as the court also determines that the award of permanent custody is in the child's best interests. *See* R.C. 2151.414(B)(1).

4.

{¶ 14} Under R.C. 2151.414(E), a finding, by clear and convincing evidence, that one of the conditions listed in R.C. 2151.414(E)(1)-(16) exists is necessary to establish that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738, syllabus. In turn, R.C. 2151.414(D) lists relevant factors to be considered by the court in determining whether an award of permanent custody to a public children's services agency is in the best interest of the child.

{¶ 15} Clear and convincing evidence is evidence that will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 16} Here, the trial court made two findings relating to mother under the conditions listed in R.C. 2151.414(E). First, under R.C. 2151.414(E)(1), the trial court held that mother failed "continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."

{¶ 17} R.C. 2151.414(E)(1) states:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be

5.

placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 18} During the disposition hearing, Karahn Scott, a caseworker with LCCS, testified that she first met mother on March 22, 2017, after learning that three of mother's older children were in the legal custody of paternal relatives. Ms. Scott testified that mother's older children had been removed due to mother's untreated mental health issues. Despite having been linked with the Zepf Center for mental health treatment, mother stopped taking her psychotropic medication when she became pregnant with B.H.

{¶ 19} After B.H. was removed from mother, the case plan required mother to reengage in mental health treatment and participate in a LCCS approved parenting class. Mother was inconsistent with her mental health treatment. On various occasions, mother made appointments with mental health care providers but failed to appear at the appointments.

{¶ 20} While mother did meet regularly with the caseworker, she missed several appointments because of work or illness. Sometimes, mother missed her appointments because she forgot they had been scheduled.

6.

**{¶ 21}** Ms. Scott testified that on one occasion, mother reported to her that "the voices have told her to hurt her children, kill her children." Ms. Scott further testified that she witnessed mother talking to herself.

**{¶ 22}** Jeffry Chesser is a security guard for LCCS. Mr. Chesser testified that he had had an opportunity to observe some of mother's visits with B.H. He indicated that during some visits, mother interacted appropriately with the child. On at least one occasion, mother attempted to feed the child food inappropriate for her age. Sometimes, mother played music or sent text messages on her phone, despite being told that it was against the rules during visits. On a number of occasions, mother handed B.H. to Mr. Chesser so that she could step out of the room and talk on her cell phone. Mr. Chesser recalled a visit where mother was reciting lyrics to a song that included vulgarity and profanity. At the time, there were other parents and children in the visitation room. On one occasion, mother's visit with B.H. was terminated because mother verbally threatened Mr. Chesser.

**{¶ 23}** Upon our review of the record, we find that the evidence supports the trial court's finding that mother failed continuously and repeatedly to substantially remedy the conditions causing B.H. to be placed outside the child's home.

**{¶ 24}** Under R.C. 2151.414(E)(4), the trial court held that mother has "demonstrated a lack of commitment toward the child by failing to regularly support,

7.

visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."

{¶ 25} In support of its holding, the trial court cited mother's failure to "actively participate" in mental health services "in a previous case and the current case." While the evidence demonstrates that mother was frequently encouraged to engage in treatment, she failed to participate in counseling or take her prescribed medication. The record supports the trial court's finding that mother's failure "demonstrates a clear lack of commitment toward remedying the conditions of removal and reunifying with this child."

{¶ 26} This court has previously explained that "the existence of only one of the factors under R.C. 2151.414(E) is sufficient to determine that a child cannot be placed with a parent within a reasonable time." *In re S.P.,* 6th Dist. Lucas No. L-14-1113, 2014-Ohio-5075, ¶ 32, quoting *In re R.L.*, 9th Dist. Summit No. 27214, 27233, 2014-Ohio-3117, ¶ 24. Upon review of the evidence, we find that the record contains competent, credible evidence supporting the trial court's conclusions that one or more of the factors enumerated in R.C. 2151.414(E) exists.

{¶ 27} As set forth above, when determining whether a grant of permanent custody is in a child's best interest, the trial court "must consider all the relevant factors, including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence in his life, and any applicability of the factors in R.C. 2151.414(E)(7) to (11)." *In re E.M.*, 9th Dist. Wayne No. 15CA0033, 2015-Ohio-5316, ¶ 13.

8.

{¶ 28} Here, the trial court found that it is in the best interest of the child to award permanent custody to LCCS because the "interaction and interrelationship between the child and her caregiver supports a finding of permanent custody." In its decision, the court indicated "the child is in need of a legally secure permanent placement and this can only be achieved through an award of permanent custody to LCCS."

{¶ 29} At the hearing Ms. Scott testified that B.H. has been placed in foster care since she was discharged from the hospital after delivery. B.H. is "very bonded" with the foster parent.

{¶ 30} The guardian ad litem assigned to the case testified that she is confident that mother loves her child. However, the "voices" in mother's head are a cause of concern. The guardian ad litem testified that mother will not "in any way, be able to effectively and safely parent this baby."

{¶ 31} After reviewing the evidence, we conclude that the trial court's decision that a grant of permanent custody to LCCS is in B.H.'s best interest was supported by clear and convincing evidence.

{¶ 32} For the reasons set forth above, mother's second assignment of error is not well-taken.

{¶ 33} On consideration, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

9.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                              JUDGE

Arlene Singer, J.          

                                  _____
James D. Jensen, J.                           JUDGE
CONCUR.

                                  _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.