[Cite as *In re P.B.*, 2019-Ohio-2373.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

IN RE: P.B.
    D.B.
    T.B.
    T.B.
    E.B.

C.A. No.     18CA011448

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    16JC49755
              16JC49756
              16JC49757
              16JC50510
              16JC50511

DECISION AND JOURNAL ENTRY

Dated: June 17, 2019

TEODOSIO, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights and awarded permanent custody of her five children to appellee Lorain County Children Services ("LCCS" or "the agency"). This Court affirms.

I.

{¶2} Mother is the biological mother of P.B. (d.o.b. 1/31/09), D.B. (d.o.b. 10/9/11), 1-T.B. (d.o.b. 6/18/13), 2-T.B. (d.o.b. 5/28/14), and E.B. (d.o.b. 11/7/15). Based on concerns regarding Mother's lack of supervision of the youngest four children, her struggle to provide for the basic needs of all the children, her mental health, and the children's exposure to domestic violence in the home, LCCS filed complaints alleging that the children were neglected and

dependent. After adjudicatory hearings, the juvenile court found the five children to be neglected and dependent. After the initial dispositional hearing, P.B., 2-T.B., and E.B. remained with Mother under an order of protective supervision by the agency. D.B. and 1-T.B. were placed in the temporary custody of LCCS. Over the course of the case below, all five children were placed in the temporary custody of various relatives. When those placements disrupted, the juvenile court awarded temporary custody of all five children to LCCS which placed them in foster homes.

{¶3} Maternal Grandmother ("Grandmother") filed a motion to intervene in the proceedings. After the juvenile court granted her intervention, Grandmother filed motions for legal custody of and visitation with the five children. LCCS filed a motion for permanent custody. After a two-day hearing, the juvenile court granted the agency's motion, terminated the parents' parental rights, and awarded permanent custody to LCCS. Mother filed a timely appeal in which she raises one assignment of error for review. Neither Grandmother nor Father has appealed.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY
FINDING THAT IT WAS IN THE BEST INTERESTS OF THE MINOR
CHILDREN TO BE PLACED IN THE PERMANENT CUSTODY OF LORAIN
COUNTY CHILDREN SERVICES DESPITE THE FACT SUCH FINDING
WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶4} Mother argues that the juvenile court's award of permanent custody of the children was against the manifest weight of the evidence. This Court disagrees.

{¶5} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers

the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶6} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶7} In its motion for permanent custody, LCCS alleged as first-prong grounds that D.B. and 1-T.B. had been in the temporary custody of the agency for 12 of the past 22 months pursuant to R.C. 2151.414(B)(1)(d), and that none of the five children could or should be returned to their parents pursuant to R.C. 2151.414(B)(1)(a). The agency premised its allegation that the children should not be returned to the parents on the parents' failure to remedy the problems that initially caused the children's removals from the home pursuant to R.C. 2151.414(E)(1), and on the parents' demonstrated lack of commitment to the children pursuant to R.C. 2151.414(E)(4). The five first-prong grounds are alternative findings; the agency must prove only one to satisfy the first part of the permanent custody test. *In re A.W.*, 9th Dist. Lorain No. 17CA011123, 2017-Ohio-7786, ¶ 17, citing *In re E.M.*, 9th Dist. Wayne No. 15CA0033, 2015-Ohio-5316, ¶ 12.

{¶8} Mother erroneously argues that the juvenile court found that all five children had been in the temporary custody of LCCS for 12 of 22 months. The judgment entry recites a finding that only D.B. and 1-T.B. were in the agency's temporary custody for at least 12 months. Considering the statutory guideline for determining when a child has entered the temporary custody of the agency, and not considering other times when the children were in the temporary custody of relatives or returned to shelter care, the record indicates that D.B. and 1-T.B. were in LCCS's temporary custody for approximately 336 days, i.e., fewer than 12 months. This conclusion is immaterial under the circumstances, however, as the juvenile court also found that LCCS satisfied the first prong of the permanent custody test by presenting clear and convincing evidence to establish that all five children cannot or should not be returned to the parents.

{¶9} Mother failed to challenge the juvenile court's finding, which is fully supported by the record, that the children cannot or should not be returned to the parents based on their

failures to remedy the problems underlying the children's removals and/or their demonstrated lack of commitment. As only one R.C. 2151.414(B)(1) finding is required to satisfy the first prong of the permanent custody test, and Mother has not challenged the R.C. 2151.414(B)(1)(a) finding, the first prong is satisfied.

{¶10} Mother next challenges the juvenile court's second-prong finding that an award of permanent custody was in the children's best interest. Although Mother argues regarding a child identified as "E.S.," this Court presumes that designation is a typographical error. Accordingly, we consider the evidence with regard to the best interest of P.B., D.B., 1-T.B., 2-T.B., and E.B.

{¶11} Father had limited involvement with the children during the case and failed to participate in any of his case plan objectives.

{¶12} While the children were still in Mother's legal custody, they lived with Grandmother while Mother served a three-month jail sentence. After Mother's release from jail, the children remained with Grandmother for another six months as Mother tried to resettle her life. After LCCS became involved, the children have not all resided together, although each child has resided with at least one other sibling. They have been placed with various relatives, in and outside Ohio, and with various foster care providers. At the time of the permanent custody hearing, P.B., D.B., and 1-T.B. were together in one foster home; while 2-T.B. and E.B. were together in another foster home.

{¶13} Mother admitted that she only attended 20 of the 41 offered visits with the children. She was late for five of those visits but still allowed to spend time with the children. Mother frequently brought other people to the visits. Although she was required to bring diapers, wipes, and food to visits, Mother typically relied on her friends and family who joined her to bring such things to visits. The caseworker described the visits as chaotic, as Mother had a

hard time handling five children at once. Even after the agency expanded her visits to three hours, wherein she saw the girls during the first two hours and the boys during the last two hours with a one hour overlap, Mother continued to struggle to control the situation. The guardian ad litem reported that Mother would play a little with the children but that she quickly became overwhelmed.

{¶14} Mother loves the children, and they were always happy to see her. The older children who could communicate did not talk about Mother outside of visitations. All five children have developed strong sibling bonds. They also love and share somewhat of a bond with Grandmother. They are well adjusted and comfortable in their foster homes.

{¶15} The guardian ad litem reported that nine year old P.B. indicated that she wants to live with her siblings. According to the guardian, the other four children were too immature to express their wishes. He recommended that the children be placed in the permanent custody of LCCS in their best interest based on the parents' lack of desire to work on their case plan objectives and the inappropriate environment in Grandmother's home.

{¶16} LCCS developed a case plan designed to facilitate reunification and offer permanency for the children. Mother's case plan objectives included (1) demonstrating the ability to meet the children's basic needs, (2) attending parenting classes and demonstrating the ability to offer consistency and appropriate discipline, (3) obtaining a mental health assessment and following all recommendations, and (4) obtaining a domestic violence assessment and following all recommendations. Mother made virtually no progress on her case plan objectives.

{¶17} Although Mother had keys to an apartment for which she had a $0 rent obligation and a utilities subsidy, the evidence indicated that she had abandoned those premises. The utilities had been shut off, mail had piled up in the mailbox, there was no food or toiletries in the

apartment, and there was trash strewn throughout the home. One bare mattress was on the floor in one of the bedrooms. Mother had not responded to two notices of abandonment posted on her apartment door. Mother continued to cash her utilities subsidy checks but used that money for other bills. It was unknown where Mother was residing, although Grandmother testified that Mother had been with her during the three days prior to the hearing. Mother worked at various jobs sporadically during the pendency of the case but never demonstrated that she could financially meet the needs of five children. Despite numerous scheduled and unannounced home visits by the caseworker between April and August 2018, Mother was never home.

{¶18} Although the caseworker let Mother use her phone to schedule parenting classes, Mother never followed through by attending group- or class sessions. The caseworker coordinated with an outside provider to work with Mother in her own home to address parenting and mental health issues, but Mother missed all four appointments by failing to be home at the scheduled times. Mother demonstrated limited parenting skills during visits, threatening to "whoop" the children, telling the children she was getting sick of them, and losing track of them at the visitation center. Mother often cried during visits.

{¶19} Based on Mother's reports of being overwhelmed and asking LCCS to take the children, the agency referred her for a mental health assessment. Mother attended the assessment which indicated a need for ongoing counseling. Mother attended one counseling session but missed every additional session scheduled from April 2017 through January 2018. The counselor for the children made a mental health referral for an in-home assessment for Mother in February, but Mother failed to be present at home at the time scheduled for that appointment. Mother repeatedly asserted that she has no mental health issues and does not require counseling or other treatment.

**{¶20}** Based on incidents of domestic violence between Mother and Father, and physical violence between Mother and Father's paramour, LCCS referred Mother for a domestic violence assessment at Genesis House. Mother completed the assessment and was directed to participate in either group sessions or address domestic violence issues with a mental health counselor, whichever option Mother chose. Mother attended one group session in November 2017 and one in January 2018. She continued, however, to have a relationship with Father. Although she testified at the hearing that she and Father were no longer involved, she did not discount the possibility of a future relationship with him.

**{¶21}** The agency looked at 37 relatives and friends of the family for placement consideration. LCCS conducted, or caused to have conducted, five home studies of relatives and friends. All persons who were determined to be appropriate potential caregivers for the children withdrew their interest in pursuing custody. The agency did not support Grandmother's request for legal custody based on Grandmother's criminal history, history with the agency, domestic violence issues in her home, and her ongoing mental health issues that she did not address consistently. Grandmother's mental health records were admitted into evidence. They indicate a history of trauma, suicide attempts, substance abuse issues, and mental health diagnoses which require multiple medications which Grandmother admitted she had stopped taking.

**{¶22}** The evidence indicates that the children's need for permanency cannot be met without a grant of permanent custody to LCCS. The children are in two different foster-to-adopt homes, but the agency believed it reasonably could find one home to adopt them all together.

**{¶23}** Based on a review of the evidence, this is not the exceptional case where the trier of fact clearly lost its way and created a manifest miscarriage of justice by terminating Mother's and Father's parental rights and awarding permanent custody of the children to LCCS. Mother

was overwhelmed by the effort required to care for five children. She was unable to maintain an appropriate home with working utilities and basic necessities. She denied having mental health issues despite an assessment to the contrary. She refused to participate in mental health and domestic violence counseling in any meaningful way. The evidence demonstrated that neither Mother, nor any other family member or friend, was capable and/or willing to provide a permanent and appropriate home for the children. Under the circumstances, the juvenile court's finding that an award of permanent custody of P.B., D.B., 1-T.B., 2-T.B., and E.B. to LCCS was in the best interest of the children is not against the manifest weight of the evidence. Mother's assignment of error is overruled.

### III.

**{¶24}** Mother's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JUSTIN MILLER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.

JAMES DICKEY, Guardian ad Litem.

K.S., pro se, Appellee.

D.B., pro se, Appellee.